UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kristina Nozal,

        Plaintiff,

  v.

Allina Health Systems Long-Term
Disability Benefit Plan; and Life Insurance
Company of North America, a CIGNA
Group Company,

        Defendants.

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**
Civil No. 13-2270 ADM/TNL

_____

Matthew B. Newman, Esq., Matthew B. Newman, P.A., Eagan, MN, on behalf of Plaintiff.

Daniel K. Ryan, Esq., Hinshaw & Culbertson LLP, Chicago, IL; and Michael T. Berger, Hinshaw & Culbertson LLP, Minneapolis, MN, on behalf of Defendants.

_____

## I.  INTRODUCTION

      This matter came before the undersigned United States District Court Judge for findings of fact and conclusions of law as to Plaintiff Kristina Nozal's ("Nozal") claim for attorney's fees. The parties successfully settled the underlying litigation at a Court-ordered settlement conference before Magistrate Judge Tony Leung but did not reach an agreement on the award of attorney's fees. Nozal and Defendants Allina Health Systems Long-Term Disability Benefit Plan ("Allina") and Life Insurance Company of North America ("LINA") agreed to submit this issue to the Court for resolution.

      Thus, the Findings of Fact and Conclusions of Law herein address only the issue of Nozal's claim for attorney's fees. The findings are based on the briefing of the parties, the

exhibits submitted to the Court, and the parties' declarations.[1]

## II.  FINDINGS OF FACT

1. Nozal was injured in a car accident. Am. Compl. [Docket No. 5] ¶ 12. After initially paying Long Term Disability (LTD) benefits to Nozal, LINA discontinued those payments. Id. ¶ 13. In December 2012, Nozal appealed LINA's decision to discontinue her benefits. Id. ¶ 14.

2. On January 16, 2013, LINA acknowledged receipt of Nozal's appeal and stated that it "require[d] an extension of up to 45 days to make a decision." Id. ¶ 15.

3. On February 15, 2013, LINA wrote Nozal's attorney and stated that "we require an extension of up to 45 days to make a decision on the Appeal." Id. ¶ 16.

4. On March 14, 2013, LINA wrote Nozal's attorney and stated that "we require an extension of up to 45 days to make a decision on the Appeal." Id. ¶ 17.

5. On April 9, 2013, Nozal's attorney wrote LINA to inform it that the Social Security Administration awarded Nozal Social Security Disability Income benefits ("SSDI"). Id. ¶ 18. In this April 9, 2013 letter to LINA, Nozal's attorney stated, "I note from the record that [LINA] is not in compliance with ERISA's[2] administrative claim and appeal regulations, which affords Plan Administrators in disability benefit appeals a single 45 day period for extensions on appeal. LINA has taken two such extensions." Id. ¶¶ 18-19.

6. LINA did not respond to Nozal's attorney regarding the allegations that LINA

---

[1] Although the parties' briefing and declarations will remain confidential under protective seal, this Order shall be conventionally filed.

[2] ERISA is an acronym for the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

was in violation of ERISA's appeals process regulations.  Id. ¶ 20

7. On April 12, 2013, LINA wrote Nozal's attorney and stated that given Nozal's award of SSDI benefits, "we would like to give you the opportunity to submit a complete copy of the medical records evaluated by the SSA-if they differ from the medical records contained in Ms. Nozal's LTD claim file. . . .  If the information is not available or beneficial for the appeal review, please let us know by April 26, 2013 and we will move forward with our review based on the information contained in the claim. . . .  The time it takes to submit additional information is TOLLED until you contact the Appeal Specialist.  The tolled time period does not count against the mandated appeal resolution time frames."  Id. ¶ 21 (emphasis in original).

8. On April 26, 2013, Nozal's attorney provided LINA with the Social Security Administration's notice of award of Plaintiff's SSDI benefits, and stated that there was no further medical information to provide LINA other than what was already included in LINA's administrative record for this claim.  Id. ¶ 22.

9. On May 10, 2013, LINA's letter to Nozal's attorney stated: "We are writing to notify you of the status of Ms. Nozal's appeal . . . we have been unable to render a decision on the appeal at this time . . . at the latest we will contact you within 30 days."  Id. ¶ 23.

10. On June 12, 2013, Nozal's attorney wrote LINA and stated that "Under the ERISA claim regulations, [LINA] was supposed to have one 45 day [period] to finalize its response to Ms. Nozal's appeal, plus one 45 day extension.  As your records will undoubtedly show, [LINA] is currently in violation of those regulations.  We continue to receive letters from you indicating you are taking another 30 days to complete this work, but that is not a proper or sanctioned procedure under the applicable regulations.  Please be advised that Ms. Nozal

reserves the right, if she is forced to litigate her claim for disability benefits, to seek equitable relief from the Court to exclude unfavorable reports and evidence developed by [LINA] after the date under the regulatory [sic] that you were supposed to respond." Id. ¶ 24.

11. On July 2, 2013, LINA wrote Nozal's attorney and stated that "We are writing to notify you of the status of Ms. Nozal's appeal . . . we have been unable to render a decision on the appeal at this time." LINA explained the delay was occasioned by their awaiting the results of an Independent Peer Review. LINA again informed Nozal that it was unilaterally extending its time to respond, writing, "at the latest we will contact you within 30 days." Id. ¶ 25.

12. On July 3, 2013, Nozal's attorney wrote LINA and stated that "I am in receipt of your letter of July 2, 2013, which as you know both out of your experience as an ERISA fiduciary administering claims and appeals and from my letter to you last month, is in complete violation of the ERISA administrative claim regulations. . . . This entire situation is unacceptable. It is also patently unfair to my client. . . . You are creating an unwarranted financial hardship for Ms. Nozal, and this is creating additional stress, fatigue and other difficulties for her." Id. ¶ 26.

13. Also in the July 3, 2013 letter, Nozal demanded that LINA immediately reinstate her long-term disability benefits with 5% interest. Id. ¶ 27.

14. On or about July 11, 2013, Nozal's attorney left a voice message for LINA. Nozal asked to confirm receipt of its latest letter and for a response. Id. ¶ 28.

15. LINA did not respond to Nozal's attorney regarding the allegations, her demand for benefits and interest, or to confirm that it had received these communications as Nozal's attorney requested. Id. ¶ 29.

16. In a letter to Nozal's attorney dated August 1, 2013, LINA advised that it was in receipt of the Independent Peer Review report, but that it was "unable to make a decision on Ms. Nozal's appeal at this time . . . . We will notify you immediately once we have reached a determination on Ms. Nozal's appeal. If we require additional information or if there is reason for delay, we will contact you immediately. At the latest, we will contact you within 30 days." Id. ¶ 30.

17. On August 19, 2013, Nozal filed her Complaint in this Court. Nozal pled one count for "failure to pay ERISA plan benefits and breach of fiduciary duty." Id. ¶ 41.

18. On October 10, 2013, LINA notified Nozal that her claim for LTD benefits was approved and reinstated her plan benefits.[3]

19. On November 19, 2013, Nozal made a written settlement demand, which included a demand for $5,000 in attorney's fees, $425 for costs, payment of past-due LTD payments with 4% interest, waiver of SSDI offset during the period of delay, and further "equitable" remedies.

20. In response, Defendants served Nozal with a Rule 68 offer under the Federal Rules of Civil Procedure. Defendants offered $5,000 for Nozal's attorney's fees and $425 for filing costs. Defendants did not respond to Nozal's request for interest or other equitable relief.

21. Nozal declined the offer.

22. On December 16, 2013, LINA served and filed its Motion to Dismiss [Docket No. 18].

---

[3] Despite having Long Term Disability Insurance and what later proved to be a significant injury, Nozal had to shoulder the full financial burden of her injury from December 2012 until April 2013, and continued to shoulder the difference between SSDI and LTD benefits until October 2013.

23. On March 6, 2014, the Court heard oral argument on LINA's Motion to Dismiss. The Court recommended the parties attend a settlement conference prior to her ruling on the motion.

24. On March 26, 2014, following a settlement conference, LINA agreed to pay Nozal a lump-sum of $4,375.00 and to submit the remaining attorney's fee dispute to the Court.

### III.  CONCLUSIONS OF LAW

1. ERISA provides that in actions by plan participants, "the court in its discretion may allow reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1); see Frerichs v. Hartford Life & Accident Ins. Co., 875 F. Supp. 2d 923, 951 (D. Minn. 2012).

2. As a threshold matter, "a fee claimant must show some degree of success on the merits before a court may award attorney's fees under 1132(g)(1)." Deckard v. Interstate Bakeries Corp., 704 F.3d 528, 537 (8th Cir. 2013).

3. LINA argues that "all of Nozal's substantive claims, and the merits of her lawsuit, were moot as a matter of law when LINA reinstated her LTD benefits on October 10, 2013." Defs.' Opp'n to Pl.'s Fee Pet. 7. And, LINA argues its Rule 68 offer precludes any recovery by Nozal. Id. at 9.

4. The facts in this case suggest otherwise. LINA reinstated Nozal's LTD benefits on October 10, 2013, almost a year after it made the decision to terminate them. LINA's conduct in unilaterally taking repeated extensions of time in its review of her appeal is without legal support. Although LINA was ostensibly working on Nozal's appeal and finally came to the conclusion that Nozal was indeed entitled to benefits, LINA made no effort to compensate for

the delay in payment. LINA did not pay interest on the delayed benefits. The Eighth Circuit recognizes that an insurance company cannot delay payment of benefits and then dodge the consequences of delay by voluntarily paying benefits once sued.[4] Parke v. First Reliance Std. Life Ins. Co., 368 F.3d 999, 1007 (8th Cir. 2004) (the court was "not persuaded by [the defendant's] formalistic attempt to create a distinction between instances where an ERISA-governed plan provider begins paying wrongfully denied benefits after a judgment is obtained and those instances where the provider begins paying wrongfully denied benefits without a judgment. If interest is an appropriate remedy under § 1132(a)(3)(B) to avoid unjust enrichment of a plan provider who wrongfully delays the payment of benefits, the award is appropriate whether a judgment is obtained or not."). LINA's Rule 68 offer does not change the analysis; LINA ignored Nozal's demand for interest and other equitable relief, instead offering only to pay her attorney, $5,000 in attorney's fees and $425 for costs. In the end, LINA paid Nozal $4,375.00 and presented the question of attorney's fees to the Court. The payment of $4,375 separate from the question of attorney's fees reflects some degree of success on the merits.

     5.     Once the threshold for success on the merits is met, a court exercising its discretion may then consider the five Westerhaus factors in deciding whether to award attorney's fees, including: (1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) the opposing party's ability to pay, (3) the potential for deterring others in similar

---

[4] LINA argues unpersuasively that it was working diligently on Nozal's appeal when it appears that it did not request an independent peer medical review until after asking for three 45 day extensions and a further 30 day extension. In none of LINA's submissions or papers is it explained why Nozal's receipt of SSDI benefits should effect LINA's decision on her entitlement to LTD benefits.

circumstances, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. Id. (citing Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984)).

6. Under these factors, Nozal is entitled to an award of attorney's fees and costs. While the Court makes no finding of bad faith on the part of LINA, LINA could have exercised greater care in reviewing the record and applying the literal terms of its Policy to its review of Nozal's claim. Again, LINA's Rule 68 offer does not change the analysis. LINA offered to pay Nozal's attorney's fees and costs, but offered her nothing in return for the significant delay and apparent violation of the ERISA plan's administrative review process. Nozal's attorney will not be faulted for rejecting such an offer, and his recovery for his client of $4,375 can be legitimately connected to his pressing for equitable relief separate from his fees. The remaining factors also weigh in favor of an award. LINA has the ability to pay attorney's fees and costs. Also, paying attorney's fees may encourage LINA to review appeals based on the beneficiary's submissions in a timely manner rather than delaying its review until after SSDI benefits are determined. Instead, the Court encouraged the parties to resolve the dispute through settlement. As already discussed above, the merits are not decided here, but the facts suggest LINA violated the terms of the ERISA appeals process.

7. The United States Supreme Court has outlined several factors a trial court may weigh when it determines whether a request for attorney's fees is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

8

    circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (2008). The court reviewing the fee request need not explicitly consider every factor. Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999). The court should start by assessing attorney's fees by determining the lodestar, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002).

    8. First, the Court addresses the reasonableness of the rates charged. Nozal's attorney, Matthew B. Newman, charged $250 per hour. He did not charge for work done by paralegals or secretaries. This hourly rate is reasonable based on the local market, the type of lawsuit, and Mr. Newman's experience. See Cook v. Shotley Constr., Inc., No. 12-2161, 2014 U.S. Dist. LEXIS 39768 (D. Minn. Mar. 26, 2014); see also Matthew B. Newman Aff. Supp. Counsel's Fee Pet. ("Newman Aff.").

    9. Second, the Court addresses the amount of hours expended on this lawsuit. Leading up to the Rule 68 offer, there was nothing particularly remarkable about this case. After Mr. Newman researched the issue, the Rule 68 offer was declined because his client was offered only attorney's fees and nothing for the delay in her benefits. LINA sought an extension to answer the Complaint and ostensibly to continue settlement negotiations, which Nozal granted. However, instead of continuing to negotiate, LINA filed a Rule 12(b)(6) motion to dismiss the entire Complaint and largely ignored the delay in the appeals process. Nozal was forced to respond. Mr. Newman claimed $5,000 of attorney's fees and $425 in costs before the Rule 68 offer. Defendants offered that exact amount and no more.

10.     Thus, because Nozal was reasonable in declining the Rule 68 offer, the question now becomes, how much time was reasonably expended.  The Court agrees that $5,000 was a reasonable pre-Rule 68 offer amount for services rendered.   Mr. Newman requests an additional $24,000 in attorneys' fees since the offer.  An additional $24,000 is equal to an additional 96 hours at Mr. Newman's reasonable rate.  Although LINA believes Nozal should have accepted its initial offer and that Newman is not entitled to attorney's fees, Defendants do not make any specific objections to the time Mr. Newman claimed for post-offer work.  The additional 96 hours is a reasonable amount of time, which Newman spent on: researching the effects of a Rule 68 offer; responding to Defendants' motion to dismiss; preparing for oral argument; engaging in settlement negotiations before Judge Leung; post-settlement conference legal work; and, preparation of the memorandum in favor of Nozal's fee petition.  <u>See</u> Newman Aff. Ex. 1. Although it is often necessary to trim attorney estimates of their time spent on behalf of their clients, in this case Newman has essentially done the trimming himself, writing off significant time for work spent on theories of the case that the Court viewed skeptically and the time spent by non-attorneys and paralegals, work that attorneys are so often tempted to claim for themselves and inflate.  Newman shall receive the full amount of requested fees.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Kristina Nozal is awarded $29,000 in attorney's fees and $425 in costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 15, 2014